IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LINDA MORKAL,                          Case No. 6:12-cv-01401-AA
                                            OPINION AND ORDER
          Plaintiff,

     v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION, aka Freddie
Mac, a government sponsored
enterprise; RECONTRUST
COMPANY, N.A.; and BANK OF
AMERICA, N.A.,

          Defendants.
_____

Anthony V. Albertazzi
The Albertazzi Law Firm
300 S.W. Columbia Street, Suite 203
Bend, Oregon 97702
     Attorney for plaintiff

James P. Laurick
Kilmer Voorhees & Laurick, PC
732 N.W. 19th Avenue
Portland, Oregon 97209
     Attorney for defendants


Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Linda Morkal moves to file an amended complaint pursuant to Fed. R. Civ. P. 15. Defendants Federal Home Loan Mortgage Corporation ("Freddie Mac"), ReconTrust Company, N.A. ("ReconTrust"), and Bank of America, N.A. ("BANA") oppose plaintiff's motion. For the reasons set forth below, plaintiff's motion is denied and this case is dismissed.

## BACKGROUND

In 2005, plaintiff and her now deceased husband took out a loan in the amount of $110,000 to refinance their residential property in La Pine, Oregon ("Property"). Pursuant to this transaction, plaintiff executed a Promissory Note ("Note"), which was secured by a Deed of Trust ("DOT"). The DOT identified plaintiff as the borrower, Quicken Loans, Inc. as the lender, Orange Coast Title Company as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. Under the DOT, plaintiff agreed to make monthly mortgage payments as required under the Note. Plaintiff also agreed that she would be in default, and subject to foreclosure, if she failed to make such payments.

After her husband's death on April 10, 2010, plaintiff stopped making loan repayments as required under the Note and DOT. On April 11, 2011, MERS assigned its interest in the DOT to BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Servicing LP, a

Page 2 - OPINION AND ORDER

subsidiary of BANA; BAC Home Loans Servicing subsequently transferred the servicing rights of plaintiff's loan to BANA.

On July 18, 2011, BANA appointed ReconTrust as successor trustee under the DOT. That same day, ReconTrust recorded a Notice of Default and Election to Sell the Property. At some unspecified time thereafter, plaintiff contacted BANA to request the amount needed to cure her default. BANA subsequently furnished "several . . . Reinstatement Calculation[s]" that were "good" through a certain date but, in each instance, plaintiff lacked "sufficient time to secure and tender the new and additional amounts [they] indicated were then owed." Proposed Am. Compl. ("PAC") ¶ 34. On December 29, 2011, BANA provided two reinstatement calculations, each articulating a different amount. By December 30, 2011, plaintiff secured the necessary funds to satisfy the higher of the two reinstatement calculations and communicated "her readiness, willingness, and ability to pay the purported default amount" to Freddie Mac. Id. at ¶ 42. Nonetheless, plaintiff never furnished payment to BANA or Freddie Mac.

A trustee's sale was held as scheduled on January 3, 2012, after which ReconTrust conveyed the Property to Freddie Mac, the highest bidder. The Trustee's Deed was recorded on January 20, 2012, in Deschutes County, Oregon.

On June 6, 2012, plaintiff filed a complaint in the Deschutes County Circuit Court alleging violations of the Oregon Trust Deed

Page 3 - OPINION AND ORDER

Act ("OTDA") based on MERS' role as beneficiary and assignment of the DOT, and BANA's prevention of or interference with her attempts to reinstate her loan. On July 26, 2012, plaintiff recorded a lis pendens in the Deschutes County Circuit Court. On August 3, 2012, defendants removed plaintiff's case to this Court. On February 20, 2014, defendants moved to dismiss plaintiff's complaint and expunge the Deschutes County lis pendens. On March 6, 2014, plaintiff filed an opposition to defendants' motion, which stipulated to dismissal of her claim pertaining to MERS and introduced several new facts that were not contained in her complaint.

On May 8, 2014, this Court issued an opinion and order ("Opinion"), granting defendants' motion to dismiss, without prejudice, and denying their request to expunge the Deschutes County lis pendens. See generally Morkal v. Fed. Home Loan Mortg. Corp., 2014 WL 2041364 (D.Or. May 8, 2014). On June 9, 2014, plaintiff moved to file the PAC.

## STANDARD OF REVIEW

Leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts apply Fed. R. Civ. P. 15 with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether a motion to amend should be granted, the court generally considers four factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party.

Page 4 - OPINION AND ORDER

United States v. Corinthian Colls., 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted). These factors are not weighted equally: "futility of amendment alone can justify the denial of a motion" to amend. Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1055 (9th Cir. 2009).

### DISCUSSION

In her PAC, plaintiff seeks to omit MERS as a defendant, add an estoppel/fraud claim, and allege facts not included in the original complaint regarding her efforts to reinstate her loan prior to the nonjudicial foreclosure.[1] See PAC ¶¶ 19, 29-44, 46.

Defendants do not contend that the proposed amendments were brought in bad faith or would cause undue delay or prejudice. Rather, they argue that the PAC fails to state a plausible claim for relief, such that the proposed amendments are futile. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) (citation omitted).

Initially, the Court notes that, although phrased slightly differently, the PAC's factual recitations are substantively

---

[1] The PAC does not specify which claims are asserted against which defendants. Nevertheless, plaintiff's quiet title allegations do not make any reference to ReconTrust or BANA. Accordingly, the Court presumes that this claim is asserted solely against Freddie Mac.

identical to the new allegations first raised by plaintiff in opposing defendants' motion to dismiss. Compare generally PAC, with Morkal Decl. The Court, however, expressly considered these facts in finding that dismissal of the original complaint was warranted. See Morkal, 2014 WL 2041364, *2-4. Thus, as defendants denote, the PAC "relies on the same failed allegations, only having been supplemented with additional details [that] do not serve to address the shortcomings observed by the Court in its prior [Opinion]." Defs.' Resp. to Mot. Am. 2. Accordingly, because plaintiff failed to meaningfully rectify or otherwise address deficiencies discussed in the Opinion, and instead merely reasserted allegations that this Court previously considered and rejected, her motion is denied. See Bojorquez v. Wells Fargo Bank, NA, 2014 WL 1883674, *2-5 (D.Or. May 8, 2014) (dismissing an amended complaint under analogous circumstances).

I.    Quiet Title/Right to Reinstatement Claim

The PAC first alleges that defendants deprived plaintiff of her right to reinstatement under Or. Rev. Stat. § 86.778, such that the "foreclosure sale of [her] Property should now be vacated."[2] PAC ¶ 49. In addition, plaintiff cites to Or. Rev. Stat. § 105.605, the statute governing actions to quiet title, and asserts she "is

---

[2] The OTDA's statutory provisions were renumbered in 2013 after plaintiff initiated this lawsuit; while the PAC refers to the old version of the OTDA, the Court's citations are to the most recent statutory version.

in the actual and exclusive possession" of the Property and that "Freddie Mac . . . is not a Bona Fide purchased for value [such that] Plaintiff's claim to title is superior to Freddie Mac's." Id. at ¶ 21. Plaintiff, however, does not dispute that she received adequate statutory notice of the nonjudicial foreclosure or that the sale of the Property was completed and recorded several months before she filed this lawsuit.

"Where a trustee has commenced [nonjudicial] foreclosure [under the OTDA, the borrower] may cure the default or defaults at any time prior to five days before the date last set for the sale." Or. Rev. Stat § 86.778. Nonetheless, the OTDA bars a borrower from challenging a nonjudicial foreclosure after it has been completed if the borrower received the requisite notice, the property is sold to a bona fide purchaser, and the trust deed is recorded. Or. Rev. Stat. § 86.797(1); Mikityuk v. N.W. Tr. Servs., Inc., 952 F.Supp.2d 958, 966-70 (D.Or. 2013); see also Or. Rev. Stat. §§ 86.764, 86.771, 86.774, 86.803.

To secure a judgment quieting title, a plaintiff must establish that she has "a substantial interest in, or claim to, the disputed property and that [her] title is superior to that of defendants." Coussens v. Stevens, 200 Or.App. 165, 171, 113 P.3d 952 (2005), rev. denied, 340 Or. 18, 128 P.3d 1122 (2006) (citations omitted). While this standard "does not require the plaintiff's title to be above reproach, it does require that

[plaintiff] prevail on the strength of [her] own title as opposed to the weaknesses of defendants' title." Id. (citations and internal quotations omitted). To satisfy this requirement, the plaintiff must expressly allege facts demonstrating that: (1) her title is superior to that of the defendants; and (2) "the subject loan has been satisfied or that plaintiff is ready, willing and able to tender the full amount owed on the loan." Rigor v. Freemont Inv. & Loan, 2012 WL 913631, *1 (D.Or. Feb. 13), adopted by 2012 WL 913566 (D.Or. Mar. 16, 2012).

The Court finds that the proposed amendments are futile for two reasons. First, while plaintiff concludes that, "[i]f not for BANA's actions in denying [her] her right to reinstatement, [she] would have cured the Default at least five (5) days prior to the sale date," her well-pleaded factual allegations are to the contrary. PAC ¶ 48. As this Court stated previously, "plaintiff's new allegations reveal that she lacked funds sufficient to cure her default at the time each reinstatement calculation was furnished." Morkal, 2014 WL 2041364 at *4. In other words, the PAC demonstrates that, despite the fact that BANA provided her with multiple opportunities prior to the foreclosure sale, plaintiff never possessed adequate funds to cure her default and therefore was neither ready nor able to exercise her right to reinstatement within the statutory time period. See PAC ¶¶ 32-34, 39, 41. Notably, plaintiff acknowledges "December 29, 2011, [as] the fifth

day before . . . the foreclosure sale of the Property" - i.e. the last day under Or. Rev. Stat § 86.778 to effectuate her right to reinstatement - yet, by her own admission, she "was not able to obtain a cashier's check sufficient to cover the [current Reinstatement Calculation] until the following day, December 30, 2011." Id. at ¶¶ 37, 41.[3] As such, "she never furnished payment within the time specified by Or. Rev. Stat. § 86.778." Morkal, 2014 WL 2041364 at *4.

Second, plaintiff's claim for quiet title does not rest on the strength of her own title, but rather on what she perceives to be the weaknesses of Freddie Mac's title: the inability to qualify as a bona fide purchaser. This is likely because the strength of plaintiff's present claim to title is questionable given that she received the statutorily required notice, the nonjudicial foreclosure has been completed, and the Property has been sold and

---

[3] To the extent that plaintiff contends that it was ambiguous whether the time frame for curing her default was extended or which of the two divergent reinstatement calculations was valid, her arguments are unavailing. Although she requested an extension from both BANA and Freddie Mac, the PAC does not indicate that one was granted. PAC ¶¶ 39-40. Even assuming, however, that Monica's and/or Freddie Mac's statement that plaintiff had until January 6, 2012, to submit her cashier's check, the fact remains that plaintiff failed to tender payment by that date or at any point thereafter. Regarding the two reinstatement calculations received on December 29, 2011, as plaintiff recognizes, the lower cure sum was expired and therefore no longer "good." Id. at ¶¶ 36-38. Accordingly, despite her "alarm and confusion," plaintiff reasonably understood that she was required to pay the higher of the two amounts to reinstate her loan. See, e.g., id. at ¶¶39, 41-42.

the trust deed recorded. See Longley v. Wells Fargo Bank, N.A., 2011 WL 1637334, *3-4 (D.Or. Mar. 29), adopted by 2011 WL 1636934 (D.Or. Apr. 29, 2011) (dismissing an action to quiet title where the plaintiff neglected to "allege any . . . facts which establish that the loan has been satisfied" and his claim did "not [rest] on the strength of his own title"). Further, plaintiff concedes that Freddie Mac purchased the Property "in good faith for value." Pl.'s Reply to Mot. Am. 2.

Moreover, as noted in the Opinion, "plaintiff has not cited to, and the Court is not aware of, any [Oregon] authority indicating that a subsequent purchaser's awareness of a borrower's attempt or desire to cure his or her default strips it of its bona fide purchaser status." Morkal, 2014 WL 2041364 at *4; see also Pl.'s Reply to Mot. Am. 2 ("[c]ounsel for plaintiff was unable to locate direct authority in Oregon defining bona fide purchaser for purposes of the [OTDA]"). Indeed, plaintiff relies on precedent from California in arguing that a subsequent purchaser is bona fide only if it had "'no knowledge or notice of the asserted rights of another.'" Pl.'s Reply to Mot. Am. 2 (quoting Melendrez v. D & I Inv., Inc., 127 Cal.App.4th 1238, 1251, 26 Cal.Rptr.3d 413 (2005)). Aside from the fact that it is not legally binding on this Court, Melendrez is factually distinguishable.

Regardless, Melendrez cannot be read to stand for the proposition that a subsequent purchaser is stripped of its bona

Page 10 - OPINION AND ORDER

fide status simply because the borrower expressed an intent to reinstate her loan prior to the foreclosure sale. See Melendrez, 127 Cal.App.4th at 1251-53; see also Collette v. Sutherland, 2014 WL 203922, *1-7 (D.Or. Jan. 15, 2014) (trust deed beneficiary that took title to the plaintiff's "property through a credit bid" at the nonjudicial foreclosure sale was a bona fide purchaser). It is axiomatic that a defaulted borrower would aspire to retain ownership of the property subject to foreclosure, but case law governing both actions under the OTDA and to quiet title have consistently required the borrower to be ready, willing, and able to cure the underlying default within the statutory period, which is not the case here. For these reasons, plaintiff's motion is denied as to her proposed quiet title/right to reinstatement claim.

II. Estoppel/Fraud Claim

Plaintiff also alleges that "BANA misrepresented . . . the proper procedure for reinstating her Loan" and "Freddie Mac misrepresented . . . that a foreclosure sale of her Property would not occur, or if it did, that any such foreclosure sale would be reversed." PAC ¶¶ 52-53. As a result, plaintiff contends that "BANA should not be estopped from asserting [she] did not comply with the right to reinstatement provisions of the OTDA" and "Freddie Mac should be estopped from now asserting it is a [bona fide purchaser or that] Plaintiff failed to challenge defects in the foreclosure process, prior to the foreclosure sale." Id. at ¶¶ 52, 54.

Page 11 - OPINION AND ORDER

To state a claim for fraud under Oregon common law, a plaintiff must allege: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely-thereon; and (9) his consequent and proximate injury." Burgdorf v. Weston, 259 Or.App. 755, 771, 316 P.3d 303 (2013), rev. denied, 355 Or. 380, 328 P.3d 696 (2014) (citations and internal quotations omitted). Similarly, the elements of promissory estoppel are: "(1) a promise, (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise, (4) resulting in a substantial change in position." Furrer v. S.W. Or. Cmty. Coll., 196 Or.App. 374, 382, 103 P.3d 118 (2004).

Further, "[i]t is well established in this circuit that claims that are 'grounded in fraud' must comply with the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)." Stewart v. Mortg. Elec. Registration Sys., Inc., 2010 WL 1055131, *9 (D.Or. Feb. 9), adopted by 2010 WL 1054775 (D.Or. Mar. 19, 2010) (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104-1105 (9th Cir. 2003)). Pursuant to Fed. R. Civ. P. 9(b), the plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to

the misrepresentations." <u>Schreiber Distrib. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986) (citation and internal quotations omitted). Likewise, the plaintiff is required to "set forth what is false or misleading about a statement, and why it is false." <u>Vess</u>, 317 F.3d at 1106.

As a preliminary matter, plaintiff does not identify a material representation made by BANA. She alleges she "had no reason to believe the purported process [for reinstatement provided by BANA] was not the correct one," yet, based on plaintiff factual recitations regarding BANA's communications with her, there is no indication that the information BANA furnished was false or misleading. <u>Id.</u> at ¶ 51. Notably, Mr. Bernal "stressed to Plaintiff that in order to stop the pending foreclosure sale, it was imperative that Plaintiff pay the exact amount of the purported default, in the exact manner provided, including certain fees and/or costs, or otherwise, the Property would be foreclosed." <u>Id.</u> at ¶ 31. Moreover, although plaintiff maintains that "BANA led [her] to believe a 'Reinstatement Calculation' would be forthcoming only for [her] to never receive one," she acknowledges that "several" reinstatement calculations were provided prior to the scheduled nonjudicial foreclosure. <u>Id.</u> at ¶¶ 31-39. Accordingly, because she neglected to identify the time, place, and specific content of BANA's false representations, as well as what was false or misleading about those representations, plaintiff's allegations

Page 13 - OPINION AND ORDER

fail to meet Fed. R. Civ. P. 9(b)'s heightened pleading standards.

In addition, plaintiff mischaracterizes Freddie Mac's communications. Namely, as shown by her well-pleaded factual allegations, Freddie Mac never expressed that the nonjudicial foreclosure sale would not proceed as scheduled or that any such foreclosure would be reversed. Instead, Freddie Mac informed plaintiff that "if her Property was 'foreclosed,' it would [be] 'reversed'" provided that she furnished the reinstatement amount by "the following Friday, January 6, 2012"; there are no other factual allegations in the PAC demonstrating that plaintiff was informed by any defendant that the foreclosure sale would be cancelled or postponed. PAC ¶¶ 43-44. As discussed above, plaintiff did not administer the requisite amount by either January 6, 2012, or at any point thereafter. In fact, she did not confirm with Freddie Mac that she retained sufficient funds until January 27, 2012, over three weeks after the nonjudicial foreclosure was completed. As a result of these shortcomings, plaintiff cannot plead the requisite elements of either a fraud or promissory estoppel claim.

In sum, plaintiff's PAC fails to state a claim upon which relief can be granted. The Opinion provided plaintiff with a detailed explanation regarding deficiencies in her original complaint and new allegations. In the PAC, however, plaintiff neglected to act in accordance with this Court's previous Opinion. Under these circumstances, the Court cannot conclude that facts

Page 14 - OPINION AND ORDER

exist entitling plaintiff to relief. For the reasons discussed herein, as well as those set forth in <u>Morkal</u>, the proposed amendments are futile. Plaintiff's motion is denied and this lawsuit is dismissed.

## CONCLUSION

Plaintiff's motion to amend (doc. 23) is DENIED. This case is DISMISSED and all pending motions are denied as moot.

IT IS SO ORDERED.

Dated this _10th_ day of August 2014.


_____
Ann Aiken
United States District Judge

Page 15 - OPINION AND ORDER